# UNITED STATES of America

## v.

## Joseph SCHIAFFINO, Defendant.

## No. 76 CR 521.

United States District Court,
E. D. New York.

July 14, 1977.

David G. Trager, U. S. Atty., E. D. N. Y., Thomas P. Puccio, Atty. in Charge, U. S. Dept. of Justice, Brooklyn Strike Force, Brooklyn, N. Y. (Bernard J. Fried, Asst. U. S. Atty., Chief, Appeals Div., David J. Ritchie, Jr., Sp. Atty., Brooklyn, N. Y., Leonard Sands, Sp. Atty., Cleveland, Ohio, of counsel), for United States.

Simeon Golar, New York City (Peter R. Silverman, New York City, of counsel), for defendant.

## FINDING OF FACT, CONCLUSIONS OF LAW AND ORDER

BRAMWELL, District Judge.

### FACTUAL BACKGROUND

This matter comes before the Court on the motion of the defendant Joseph Schiaffino, to dismiss the instant indictment, 76 CR 521,[1] which charges him with one count of criminal contempt for refusing to answer questions posed to him as a witness in the

---

1. Indictment 76 CR 521 reads as follows:

    On the 5th day of May, 1976, in the Eastern District of New York, JOSEPH SCHIAFFINO, having appeared as a witness in the trial of *United States v. John Caputo,* 74 CR 641, in the United States District Court for the Eastern District of New York, and having been asked by the attorney for the United States; "Mr. Schiaffino, did John Caputo come to you on or about April, 1971 and ask you to make a phone call to Eugene Statile?", and having answered "I take the Fifth Amendment.", and having received a lawful order of a Court of the United States, in open Court to wit: to answer the aforesaid question posed by the attorney for the United States Government, did unlawfully, wilfully, and knowingly disobey the said lawful order

trial of *United States v. John Caputo*, 74 CR 641, after having received a grant of immunity pursuant to 18 U.S.C. §§ 6002, 6003.[2] On May 5, 1976, Mr. Schiaffino was held in civil contempt by this Court for his refusal to so answer pursuant to 28 U.S.C. § 1826.[3] Thereafter, on August 18, 1976, a Federal Grand Jury sitting in the Eastern District of New York handed up indictment 76 CR 521 based on the aforementioned conduct of Mr. Schiaffino.

Mr. Schiaffino contends that the indictment should be dismissed on the following grounds: first, that the Government failed to honor an alleged promise that Mr. Schiaffino would not be required to testify and that this claimed breach of promise constituted prosecutorial misconduct; and second, that the grant of immunity was defective in that the original immunity grant had somehow lapsed, that a new order should have been obtained, and that accordingly, the original order of immunity was invalid at the time the defendant was alleged to be in contempt for his refusal to testify at the *Caputo* trial.[4]

In 1973, Denis E. Dillon, then Attorney in Charge of the United States Department of

of the United States Court in that he refused to answer the aforesaid question.
(Title 18, United States Code, Section 401)
Title 18, United States Code, Section 401 provides in pertinent part as follows:
*Power of court*
A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

. . . . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

2. Title 18, United States Code, Section 6002 provides in pertinent part as follows:
*Immunity generally*
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
(1) a court . . . of the United States,

. . . . .

. . . and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.
Title 18, United States Code, Section 6003 provides:
*Court and grand jury proceedings*
(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of

this section, upon the request of the United States Attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

3. Title 28, United States Code, Section 1826 provides in pertinent part:
*Recalcitrant witnesses*
(a) Whenever a witness in any proceeding before or ancillary to any court of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
(1) the court proceeding, . . .

. . . . .

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

4. The defendant had originally contended as a further ground in support of his argument that the grant of immunity was defective in that the

Justice, Brooklyn Strike Force, was conducting an investigation into bribery allegations involving a Special Agent of the Federal Bureau of Investigation.

Mr. Schiaffino, who had personal knowledge of the subject matter of the investigation, claims, by sworn affidavit submitted in support of his motion to dismiss, that in 1973 Schiaffino was promised by Dillon that he "would never be called to testify about anything [he] was about to say to [Dillon about the bribe]." (Schiaffino Affidavit at 2).[5]

More specifically, Mr. Schiaffino alleges that he had agreed to meet with the Federal prosecutor only after he had been asked to do so by Special Agent George Moresco, a longtime friend who was then assigned to the New York Office of the Federal Bureau of Investigation. Schiaffino alleges that Agent Moresco had assured him that "Dillon had promised him [Moresco] that any conversation with me [Schiaffino] would not be a matter of record and there would be no grand jury involvement." (Schiaffino Affidavit at 2). Mr. Schiaffino claims that he then met Mr. Dillon "[s]omewhat reluctantly" and the following conversations and events transpired:

> [a]t first I expressed my apprehension with regard to discussing the matters in question with Mr. Dillon. Before we discussed anything of substance Dillon stated to me that our discussion would be "strictly off the record" and that I would never be called to testify about anything I was about to say to him. He informed me that he was not interested in prose-

cuting the suspect FBI Agent or anyone else and was only interested in forcing his resignation. Based upon these assurances, I told Mr. Dillon what I knew concerning the bribe . . . [Mr. Dillon thereafter] excused himself from the room and returned a short while afterwards. He thereupon informed me that he had discussed my information with . . . Richard Shanley (another Special Attorney) and that they had agreed that I should be taken before a grand jury to testify that very morning. I immediately protested, reminding Dillon of his promise to me. He then turned to me and asked me how many years I had been a cop. In response I told him this was my twenty-second year on the job. Dillon then stated that I had no choice, that I didn't have my pension yet and that I would have to testify before the Grand Jury. If I refused, he threatened to report my activity to my superiors in the police department. However, if I agreed to testify Dillon stated he would not contact the New York City Polict (sic) Department and would permit me to file my retirement papers.

> I was ushered into the Grand Jury believing that Dillon was right in that he was giving me no choice in the matter. If I didn't agree to testify voluntarily, he threatened me with the dishonorable loss of my job and the loss of a substantial pension. On the way to the grand jury room I turned to Dillon and said "I want to see a lawyer before I do anything." Dillon replied that I did not need an

United States Attorney for the Eastern District of New York, David G. Trager, had not personally participated in the application for an order of immunity, in contravention of the statutory mandate set forth in 18 U.S.C. § 6003, as recognized and articulated by the Second Circuit in *In re Di Bella*, 499 F.2d 1175 (2d Cir. 1974).

However, the defendant has now withdrawn this argument. As stated in the Defendant's Post Hearing Memorandum, "David [G.] Trager, United States Attorney for the Eastern District of New York testified . . . [as to] the procedure followed with respect to the application for an order of immunity. Based upon his testimony, the defendant no longer contends that the grant of immunity was defective be-

cause of lack of participation on the part of the United States Attorney." (Defendant's Post Hearing Memorandum at 5).

5. The investigation concerned a bribe which was allegedly paid by John Caputo to Special Agent Joseph Stabile, Federal Bureau of Investigation and Sergeant Eugene Statile, New York City Police Department, the purpose of which was to obtain the dismissal of a federal gambling charge. An internal investigation conducted by the Federal Bureau of Investigation has not resulted in the filing of criminal charges but has led to the transfer of Special Agents Stabile, George Moresco and another unnamed agent.

attorney since I was only a witness and not a principal and once again insisted that I appear before the Grand Jury immediately. Reluctantly, out of fear and ignorance without the benefit of counsel I appeared and testified before the Grand Jury.

(Schiaffino Affidavit at 2).

The Government has presented, in opposition to the defendant's motion to dismiss the indictment, the sworn affidavit of Denis E. Dillon, now the District Attorney of Nassau County. Therein, Mr. Dillon states that "[a]t no time did [he] . . . tell Mr. Moresco that there would be no 'grand jury involvement.'" (Dillon Affidavit at 1). Dillon also avers that although he had sometimes conducted "off the record" interviews, he had "no recollection of such a representation" in this case, but that if he had made such a promise he would "not go forward with any on the record interviews or grand jury appearances without the consent of the interviewed." Indeed, Mr. Dillon "recall[s] that, in this case, Mr. Schiaffino, after initially indicating reluctance to testify for the above stated reasons [concerning his Police Department pension rights], then agreed to testify and testified voluntarily." (Dillon Affidavit at 2). Dillon denies Mr. Schiaffino's allegations that he had threatened to report Schiaffino's activities to his superiors in the Police Department or that he had informed Schiaffino that the latter had no choice but to testify. (Dillon Affidavit at 2).

As previously indicated, the defendant also contends that the immunity order dated February 20, 1975, was defective in that it had expired by the time of the May, 1976 *Caputo* trial.[6] Mr. Schiaffino argues that due to the lapse of time, the prosecutor should have sought authorization from the Attorney General for a second immunity order.

In order to resolve the factual issues raised by Mr. Schiaffino's allegations, this Court conducted an evidentiary hearing on January 14, 18, 1977 at which the United States presented the testimony of the following witnesses: Denis E. Dillon, now District Attorney, Nassau County; David G. Trager, United States Attorney for the Eastern District of New York; Richard Shanley, then Special Attorney, United States Department of Justice, Brooklyn Strike Force; and Russell T. Pennington, Deputy United States Marshal, Eastern District of New York. Mr. Schiaffino testified in his own behalf and called Special Agent George Moresco, Federal Bureau of Investigation, as a defense witness. Various documents were also introduced into evidence by both sides.

The following constitutes this Court's formal Findings of Fact, Conclusions of Law, and Order with respect to the evidentiary hearing.

## FINDINGS OF FACT

1. In June, 1973, a Grand Jury sitting in the Eastern District of New York was conducting an investigation into an alleged violation of 18 U.S.C. § 202, concerning a bribe allegedly paid in 1971 by one John Caputo to Special Agent John Stabile of the Federal Bureau of Investigation and to Sergeant Eugene Statile of the New York City Police Department, the alleged purpose of which was to obtain the dismissal of then-pending federal gambling charges. Defendant Schiaffino, as he has testified before the Grand Jury, had first-hand knowledge of the incident. (Hearing Exhibit No. 5 at 2–5).

2. Approximately eight or ten months prior to June, 1973, Schiaffino, then a Detective with the New York City Police De-

---

6. The May, 1976 proceeding was a retrial of an earlier trial, which had begun on November 3, 1975, and had ended in a mistrial.

As previously noted at footnote 4, after consideration of the testimony of the United States Attorney David G. Trager at the evidentiary

hearing, the defendant has withdrawn that portion of the motion to dismiss grounded on the allegation that the grant of immunity was defective in that Mr. Trager played no personal role in the application for an order of immunity.

partment,[7] had met informally with Special Agent George Moresco of the Federal Bureau of Investigation, whom he had known professionally for approximately fifteen to twenty years. (Hearing Minutes, 1/18/77 at 156 (Moresco)). At this time, Schiaffino advised Moresco that he had information relating to a payment of $15,000 by Caputo to an FBI Agent and a New York City Police Sergeant. (Hearing Minutes, 1/18/77 at 105–106 (Schiaffino); Hearing Minutes, 1/18/77 at 158 (Moresco)). Thereafter, Special Agent Moresco, who had learned that Dillon was investigating the incident, advised Dillon about the information he had received from Schiaffino and sought to keep this information "off the record." (Hearing Minutes, 1/18/77 at 166–167 (Moresco)). Upon receipt of this information and in the weeks preceding Schiaffino's actual appearance at Dillon's office, Dillon made efforts to have Moresco convince Schiaffino to come to the federal prosecutor's office to discuss the alleged bribe. (Hearing Minutes at 11, 13–14, 25–26 (Dillon)).

3. On June 11, 1973, after Mr. Schiaffino had not come to Dillon's office, a subpoena was issued commanding him to appear before a grand jury on June 18, 1973 at 10:00 A.M. (Hearing Minutes, 1/14/77 at 11 (Dillon); Hearing Exhibit No. 1). Deputy U. S. Marshal Russell T. Pennington personally served this subpoena upon Mr. Schiaffino at his home located at 45 Esther-Depugh Street, Staten Island, New York, on Thursday evening, June 14, 1973. (Hearing Minutes, 1/18/77 at 186–187, 189 (Pennington)).

4. On Sunday, June 17, 1973, Mr. Schiaffino went to Agent Moresco's home for the purpose of discussing Schiaffino's receipt of the subpoena. Schiaffino did not tell Moresco that he would not appear before the Federal Grand Jury. However, Schiaffino was reluctant to testify and asked if he could appear off the record in Dillon's office. Moresco, acting as an intermediary, made a telephone call to Dillon and requested that Schiaffino be permitted to talk off the record. Dillon indicated that Schiaffino could come in and talk off the record; however, he did not promise Moresco that Schiaffino would not be required to testify before the Grand Jury. (Hearing Minutes, 1/18/77 at 167, 170–173 (Moresco); (Dillon Affidavit at 1); cf. Hearing Minutes, 1/14/77 at 28 (Dillon)).

5. On June 18, 1973, pursuant to the subpoena which directed him to appear that morning, Mr. Schiaffino appeared at the United States Courthouse in Brooklyn, New York. Schiaffino proceeded to Dillon's office where he met with Dillon for approximately one-half hour. During this meeting, he advised Dillon that he was concerned about discussing his knowledge regarding the alleged bribe. Mr. Schiaffino indicated that there were two bases for his concern: first, the bribe had been given by John Caputo, an old friend of Schiaffino's father, and accordingly, he was embarrassed because of his father's relationship with Caputo; and second, he was worried that if the New York City Police Department learned that he had testified before a Federal Grand Jury that this would adversely affect his pension since he was eligible for and had already applied for retirement from the Police Department. (Hearing Minutes, 1/14/77 at 14–15, 19–20 (Dillon)). With respect to the first basis of Mr. Schiaffino's concern, to wit, his father's friendship with Caputo, Dillon "reminded . . . Schiaffino that he was a police officer and that such consideration of friendship would be improper for an officer of the law." (Dillon Affidavit at 1). With respect to the second basis of Mr. Schiaffino's concern, to wit, his apprehensions regarding placing his pension in jeopardy, Dillon promised Schiaffino that he "would not do anything with . . . the grand jury testimony" until Schiaffino had retired from the Police Department. (Hearing Minutes, 1/14/77 at 17, 29 (Dillon)). Dillon did not promise Schiaffino that he would not have to appear before the Grand Jury on June 18, 1973. (*Id.* at 28; see Dillon Affidavit at 1).

---

7. Schiaffino, by June, 1973, had served for approximately twenty-two years with the New York City Police Department. (Hearing Minutes, 1/18/77 at 100 (Schiaffino)).

6. Thereafter, on June 18, 1973, Mr. Schiaffino, an experienced New York City Police Officer, who was fully familiar with grand jury proceedings, testified before the Grand Jury and recounted his knowledge of the events concerning the alleged $15,000 payment by John Caputo to Agent Stabile and Police Sergeant Statile. (Hearing Exhibit No. 5; Hearing Minutes, 1/18/77 at 122 (Schiaffino)).[8] After this initial appearance before the Grand Jury, Schiaffino volunteered additional information to Dillon relevant to the alleged bribe. (Hearing Minutes, 1/14/77 at 21–22 (Dillon)). At the time of this initial appearance before the Grand Jury, Mr. Schiaffino did not believe that he had committed a crime or that he was, in any manner, involved in criminal activity. Rather, Mr. Schiaffino believed, as indeed Mr. Dillon had informed him, that he was only testifying as a witness. (Hearing Minutes, 1/18/77 at 118–119 (Schiaffino)).

7. Mr. Schiaffino retired with his pension from the New York City Police Department on July 13, 1973. (Hearing Minutes, 1/18/77 at 133 (Schiaffino)).

8. On November 21, 1973, pursuant to a grand jury subpoena (Hearing Minutes, 1/18/77 at 114 (Schiaffino)), Mr. Schiaffino testified for a second time before a grand jury sitting in the Eastern District of New York concerning his knowledge of the alleged $15,000 payment by Caputo to Stabile and Statile, as well as to other matters. (Shanley Affidavit at 2; Government Exhibit No. 6).[9] It was at this second appearance before the Grand Jury that Mr. Schiaffino asserted for the first time (and only when the Special Attorney questioning him sought to refresh his recollection by reading from the transcript of his earlier appearance) that on the previous occasion he had been told that he "wasn't going before the grand jury and I ended up before the grand jury." (Government's Exhibit No. 6 at 19).[10] Although Mr. Schiaffino, on this occasion, repeated this claim or a species thereof (*Id.* at 49, 51, 54, 57, 58, 61), at no time, during this or the earlier appearance before the Grand Jury, did he assert, as he now does, that Dillon had promised him "that I would never be called to testify about anything that I was about to say to him." (Schiaffino Affidavit at 2).

9. On February 13, 1975, David G. Trager, United States Attorney for the Eastern District of New York, personally approved a request to the Attorney General of the United States for authorization to seek an order, pursuant to 18 U.S.C. §§ 6002, 6003, requiring Mr. Schiaffino to testify in the trial of *United States v. John Caputo*, in the Eastern District of New York (Government's Exhibit No. 2; Hearing Minutes, 1/14/77 at 92 (Trager)). The requisite authorization was obtained (Government's Exhibit No. 2) and by order of this Court dated February 20, 1975, Mr. Schiaffino was

---

**8.** Essentially, Schiaffino's testimony was that in 1971 while in the Paris Bar, New York, New York, he was asked by Caputo to contact Sergeant Statile and tell him that there was someone to see him in the bar. Schiaffino did so. Statile came to the bar. Schiaffino told Caputo that Statile had arrived and left the two of them together. About one week later, Statile offered Schiaffino $100 for making the phone call. According to Schiaffino, he refused the money. At this time was told that Statile and Agent Stabile had received $15,000 from Caputo. Further details were later provided by Schiaffino when he testified for a second time before a Grand Jury on November 21, 1973. (Government Exhibit No. 6). At this appearance, Schiaffino testified, *inter alia*, that the $15,000 payment, according to Sergeant Statile, was made by Caputo to have a federal gambling charge dismissed, but that Caputo had been "beat[en]" out of the money since the

arrest was only a so-called "harassment collar." (*Id.* at 25–26).

**9.** At this second appearance, Schiaffino was examined by Richard Shanley, then Special Attorney, Brooklyn Strike Force (Government Exhibit No. 6). Mr. Schiaffino now alleges that before he testified that he "told [Shanley] of the promise Dillon had made to me." (Schiaffino Affidavit at 4). However, this allegation was not repeated by Schiaffino when he testified in support of his motion and it was refuted by Shanley. (Hearing Minutes, 1/18/77 at 100–141 (Schiaffino); Hearing Minutes 1/14/77 at 60 (Shanley)).

**10.** At this point in his testimony, Schiaffino began disputing the accuracy of the minutes of a portion of his earlier appearance. (Government Exhibit No. 6 at 20).

ordered to testify in the *Caputo* trial (Government's Exhibit No. 3).

10. In May, 1976, following an earlier mistrial on November 3, 1975, the *Caputo* trial began. On May 5, 1976, Mr. Schiaffino was called as a Government witness and, upon his refusal to testify, was granted immunity pursuant to the February 20, 1975 immunity order. Mr. Schiaffino based his refusal to testify on two grounds: The Fifth Amendment, and his father's friendship with Caputo. At this time, Schiaffino did *not* claim that there had been a breach of any promise made by Dillon. (Hearing Minutes, 1/18/77 at 135–136 (Schiaffino)). As previously stated, Mr. Schiaffino persisted in his refusal to testify at the *Caputo* trial, was held in civil contempt, and the instant indictment, 76 CR 521, followed.

## CONCLUSIONS OF LAW

1. It is well recognized that absent a valid constitutional, common law, or statutory privilege, the Court has "a right to every man's evidence." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). As previously stated, this Court finds that Mr. Dillon did *not* promise defendant Schiaffino that he would not have to testify concerning the bribe allegedly paid by Caputo. Accordingly, the legal question of whether a prosecutor, absent statutory authority, has the power to make such a binding promise need not be decided in order to rule on this motion. We note, however, that, in appropriate circumstances, the Government has been held to an unauthorized promise albeit in connection with a plea bargain. E. g., *Palermo v. Warden, Greenhaven State Prison*, 545 F.2d 286 (2d Cir. 1976).

2. Mr. Schiaffino's appearance before the Grand Jury on July 18, 1973, was likewise *not* procured by any threats made or coercion exercised by Mr. Dillon. Indeed, Schiaffino's appearance before the Grand Jury was *not* the product of any prosecutorial misconduct, but rather was pursuant to a lawfully issued and properly served subpoena to testify. Rule 17, Federal Rules of Criminal Procedure. The only promise that was made to Mr. Schiaffino by Mr. Dillon was that the fact of Schiaffino's appearance before the Grand Jury would not be disclosed to the New York City Police Department until Schiaffino was effectively retired from the Police Department. This promise was not breached. Mr. Dillon and his office fully complied with their obligations pursuant to this promise.

3. Since there has been no prosecutorial misconduct, there clearly has been no violation of Mr. Schiaffino's due process rights, or of any of Mr. Schiaffino's other rights, be they constitutional, statutory, or decisional.

4. The procedures used in seeking the immunity order were in full accord with the "wiser course" suggested by the Second Circuit in *In re Di Bella*, 499 F.2d 1175 (2d Cir. 1974), i. e., the United States Attorney personally approved the application for the order.

5. Finally, there is no requirement that the Government must seek a new order of immunity in the event of a retrial. This Court holds that once an order has been obtained for a particular proceeding before a United States District Court, that order remains valid and in full force and effect until the termination of that proceeding. Sections 6002 and 6003 of Title 18 of the United States Code do *not* require otherwise. Clearly, until final disposition of indictment 74 CR 641, it is disingenuous to contend that the proceedings had been terminated.

## SUMMARY OF THE COURT'S DETERMINATION AND ORDER

In sum, this Court finds, after careful consideration of the affidavits submitted by the United States and the defendant, the testimony of the witnesses, and the documentary evidence adduced at the evidentiary hearing, that the defendant Schiaffino was not promised that he would not have to testify concerning his knowledge of the bribe incident. It is concluded that his testimony on June 18, 1973 was voluntary and not the result of any prosecutorial promise

or misconduct. It is further concluded that the grant of immunity was lawfully and properly obtained. Finally, it is concluded that the immunity order relied upon by the Government at the second trial, was a valid instrument which remained in full force and effect until the termination of that proceeding.

In reaching these conclusions, the Court has credited the testimony of Denis E. Dillon, David G. Trager, Richard L. Shanley, and Russell T. Pennington, as well as the Government Exhibits introduced into evidence during the hearing. This Court has also credited the affidavits submitted by Denis E. Dillon and Richard L. Shanley. The Court has discredited the testimony of George Moresco and Joseph Schiaffino, except to the extent noted above.

Accordingly, the defendant's motion to dismiss the instant indictment on grounds of prosecutorial misconduct and on grounds of a defective immunity grant is hereby denied.

It is SO ORDERED.